1

2

3

4                            UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    MARK ESQUIBEL,                          Case No.  21-cv-02510-WHO

8                    Plaintiff,
                                             **ORDER GRANTING DEFENDANTS'**
9         v.                                 **MOTION TO DISMISS**

10   KINDER MORGAN, INC.,                     Re: Dkt. No. 7

11                   Defendant.

12          Defendants Kinder Morgan Energy Partners L.P., Scott Manley, Kinder Morgan, Inc.

13   (collectively, "Kinder Morgan") move to dismiss plaintiff Mark Esquibel's ("Esquibel") first

14   amended complaint ("FAC").  The FAC, filed by Esquibel when he was pro se, alleges six

15   employment-related causes of action: (1) defamation of character by slander per se; (2) knowing

16   and intentional failure to comply with itemized employee wages statement provisions; (3)

17   violation of CAL. BUS. & PROF. CODE § 17200; (4) fraudulent misrepresentation; (5) wrongful

18   termination for violation of public policy; and (6) breach of oral contract.

19          Esquibel is now represented by counsel.  He concedes to dismissal without prejudice of his

20   first, second, third, and sixth causes of action, asserts that he can plausibly allege the fourth and

21   fifth causes of action, and wishes to plead a new cause of action under the False Claims Act.

22   Kinder Morgan contends that all of Esquibel's claims should be dismissed with prejudice and that

23   Esquibel should not be allowed to add a new cause of action.  For the reasons explained below,

24   Esquibel's second and sixth causes of action are DISMISSED with prejudice against all

25   defendants because they are time-barred.  His first, third, fourth, and fifth causes of action are

26   DISMISSED without prejudice and he is GRANTED leave to amend the FAC.

27                                     **BACKGROUND**

28          This case arises out of Esquibel's former employment with Kinder Morgan.  Esquibel filed

United States District Court
Northern District of California

his original complaint ("Complaint") pro se on January 13, 2019.  Dkt. No. 1 at 24–25 ("Notice of Removal, Ex. B").  He filed the FAC pro se on October 8, 2020.  Dkt. No. 1 at 13–22 ("Notice of Removal, Ex. A").  In the FAC, Esquibel only alleges claims against Kinder Morgan Energy Partners and Scott Manley.  *See* Notice of Removal, Ex. A.  Esquibel did not allege any claims against Kinder Morgan, Inc.  *Id.*  Since filing the FAC, Esquibel has retained counsel.  *See* Dkt. Nos. 23, 27.

On April 14, 2021, Kinder Morgan filed this present motion to dismiss Esquibel's FAC. Dkt. No. 7 ("Mot.").  Esquibel's opposition includes an accompanying declaration, elaborating on the facts alleged in his FAC and adding some new facts.  *See* Dkt. No. 25 ("Opp."); Dkt. No. 25-1 ("Esquibel Decl.").  These facts are laid out below.

Esquibel is a state and federally-badged incident commander for the petroleum and natural gas industries.  Esquibel Decl. ¶ 1.  Kinder Morgan is an energy infrastructure company.  After a pipeline explosion in Walnut Creek, California that killed five people in 2004,  Kinder Morgan hired Esquibel as a right-of-way specialist to complete its probationary task of compliance in order to reduce felony criminal charges and allow Kinder Morgan to keep government jet fuel contracts to the military installations it serviced.  Esquibel Decl. ¶¶ 2–3.  Over the next 13 years, Esquibel worked at Kinder Morgan with a perfect record until he was terminated in early January 2019.  *Id.* ¶ 8.  Esquibel alleges that he received his final paycheck on January 11, 2019 but that he was actually terminated on January 9, 2019.  *Id.*  Kinder Morgan's director of Human Resources ("HR") declares that Kinder Morgan terminated Esquibel on January 11, 2019.  Dkt. No. 7-2 ("Werme Decl.") ¶ 2.

Esquibel alleges that he experienced a number of problems during his employment.  One was that Kinder Morgan had falsely informed him that he was insured when he participated in the annual pilot training and when he drove the company vehicle.  *Id.* ¶ 4–5; FAC ¶ 36.  Despite his repeated requests for the written insurance policy, Kinder Morgan never sent him the policy. Esquibel Decl. ¶ 4.  Instead, Esquibel found the policy on his own and learned that his annual pilot training voided all insurance coverage.  *Id.*  As a result, in August 2013, when he was involved in a no-fault accident with the company truck, he was not fully insured by Kinder Morgan.  *Id.* ¶ 5;

1    FAC ¶ 30.  He suffered a concussion but had to return to work the following December because

2    his job would not be held for longer than six months.  FAC ¶ 31; Esquibel Decl. ¶ 5.

3        Esquibel also alleges that he was targeted by Kinder Morgan as a result of his work as the

4    lead organizer to unionize its California employees.  *See* FAC ¶ 26.  Kinder Morgan made it

5    known to him that union-organizing tactics were not tolerated within the corporate culture, in part

6    by developing a training program titled, "Keep Kinder Morgan Union Free."  Esquibel Decl. ¶ 10.

7        He also alleges that he was subject to racial harassment between 2008 and 2018.  Esquibel

8    Decl. ¶¶ 6, 11.  Esquibel is of American Indian and Hispanic heritage and was in a relationship

9    with a Black woman during the relevant time period.  *Id.* ¶ 10.  Colleagues used racial slurs to

10   describe celebrity figures in front of him.  *Id.*  He reported these racial slurs to his immediate

11   supervisor and HR to no avail.  FAC ¶ 28; Esquibel Decl. ¶¶ 6, 11.

12       In 2017, Scott Manley became the fifth director of the Pacific Northern Region in less than

13   12 years and made it known to the employees that he was going to "tune [Esquibel] up."  Esquibel

14   Decl. ¶ 9.  Esquibel believed that the "tune me up" comment was meant to intimidate him to

15   conform with Kinder Morgan's customs and policies, which tolerate racism and doxing as well as

16   allow dangerous situations such as the one below.  *Id.*

17       In 2018, Esquibel became aware that there was corrosion of a specific piping component

18   known as a "B-Sleeve" that could cause an explosion ("Corrosion Problem").  FAC ¶ 27; Esquibel

19   Decl. ¶ 7.  The statistics showed a 20% leak rate for B-Sleeves; there were 300 B-Sleeves in

20   pipelines around the Bay Area.  *Id.*  Esquibel understood that "Kinder Morgan must periodically

21   inspect and prepare reports regarding the operational status of the B-Sleeves and the pipeline,

22   including any defects or remedial measures that must be taken."  Esquibel Decl. ¶ 13.  He urged

23   Kinder Morgan to take remedial action by replacing the B-Sleeves; Kinder Morgan decided it was

24   too expensive and chose not to remedy the Corrosion Problem.  FAC ¶ 27; *Id.* ¶ 7.  As a result,

25   Esquibel informed the California State Fire Marshal of the situation.  *Id.*  He believes that "Kinder

26   Morgan obtained at least one renewal of at least one government contract based on at least one

27   report that falsely omitted reporting the danger posed by the B-Sleeve Corrosion Problem."

28   Esquibel Decl. ¶ 14.  He alleges that he was terminated because he was a "whistleblower" who

1    discovered and sought to remedy a dangerous problem involving corrosion of the underground

2    piping that carries jet fuel between the Oakland and San Francisco airports.  FAC ¶ 27; Esquibel

3    Decl. ¶¶ 7, 14.

4        Later in 2018, Kinder Morgan requested that Esquibel and all Kinder Morgan employees

5    consent to a background check and requested DMV records.  Opp. at 4–5.  He and other

6    employees requested that the information not be released to any third party, but Scott Manley, the

7    regional director, and the HR Department denied the request.  *Id.*  Manley then suspended

8    Esquibel without pay in the winter of 2018 and spent the next few months "smear[ing]

9    [Esquibel's] reputation and character in an effort to fire [him] for cause."  Esquibel Decl. ¶ 8.

10   Kinder Morgan ultimately fired Esquibel in early January 2019.  Esquibel Decl. ¶ 8.

## LEGAL STANDARD

12       Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

13   if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

14   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

15   face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when

16   the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

17   is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

18   omitted).  This standard is not akin to a probability requirement, but there must be "more than a

19   sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require

20   "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

21   relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.

22       In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

23   court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

24   plaintiff.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is

25   not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

26   fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

27   2008).  If the court dismisses the complaint, it "should grant leave to amend even if no request to

28   amend the pleading was made, unless it determines that the pleading could not possibly be cured

United States District Court
Northern District of California

4

1    by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

2    this determination, the court should consider factors such as "the presence or absence of undue

3    delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

4    undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

5    *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

6          Pro se complaints are held to "less stringent standards than formal pleadings drafted by

7    lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Where a plaintiff is proceeding pro se, the

8    Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of

9    any doubt.  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, pro se

10   pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim

11   has been stated. *Ivey v. Bd. Of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

## I.    UNCONTESTED CLAIMS

13         Esquibel does not challenge the dismissal of his first, second, third, and sixth causes of

14   action.  Opp. at 11–12.  He asserts that these claims should be dismissed without prejudice to not

15   preclude a future motion to amend the complaint based upon factual information uncovered at a

16   later date.  *Id.* at 12.  The first and third causes of action may be amended, but the second and sixth

17   are barred by the statute of limitations.

### A.    Time-Barred Claims:  Second and Sixth Causes of Action

20         Esquibel concedes that his second cause of action, failure to provide an accurate wage

21   statement, and sixth cause of action, breach of oral contract, are time-barred.  Opp. at 11.  His

22   second cause of action, which is asserted under CAL. LAB. CODE § 226, is an action upon a statute

23   for a penalty and therefore has a one-year statute of limitations.  *See Falk v. Children's Hosp. Los*

24   *Angeles*, 237 Cal. App. 4th 1454, 1469 (2015) (finding an employee's cause of action against the

25   employer for failing to provide complete and accurate wage statements was subject to a one-year

26   limitations period under CAL. CODE CIV. PROC. § 340).  Esquibel was terminated on or about

27   January 11, 2019 and filed his Complaint on January 13, 2020.  Esquibel Decl. ¶ 8; Mot. at 10;

28   Dkt. No. 1 at 24–25 ("Notice of Removal, Ex. B").  As a result, even if Esquibel uncovered new

United States District Court
Northern District of California

1  facts in the future relating to Kinder Morgan's failure to provide accurate wage statements, those

2  future claims would be time-barred.  Because future amendment would be futile, Esquibel's

3  second cause of action is DISMISSED with prejudice.  *See Carrico v. City and Cnty. of San*

4  *Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (holding that leave to amend is "properly denied"

5  "if amendment would be futile").

6      Likewise, Esquibel's sixth cause of action, breach of oral contract, has a two-year statute

7  of limitations under CAL. CODE CIV. PROC. § 339.  Esquibel's sixth cause of action arises out of the

8  alleged oral auto insurance contract with Kinder Morgan that occurred before his accident in

9  August 2013, more than six years before he filed suit.  FAC ¶ 52–53; Esquibel Decl. ¶ 5.  Because

10  any future amendment under this cause of action will also be time-barred, and therefore futile, his

11  sixth cause of action is DISMISSED with prejudice.

### B.    Claims That May Be Amended:  First and Third Causes of Action

13      Esquibel concedes that he cannot satisfy the prima facie elements of his first cause of

14  action, defamation, under the facts known to date.  Kinder Morgan asserts that Esquibel's

15  defamation claim should be dismissed with prejudice because (1) he has failed to identify any

16  allegedly defamatory statement made by Kinder Morgan; (2) any allegedly defamatory statement

17  by management or coworkers would be privileged; and (3) any defamation claim would be time-

18  barred.  Dkt. No. 26 ("Reply") at 6–7.  CAL. CODE CIV. PROC. § 340(c) requires that an action for

19  libel or slander be brought within a year and courts have found that defamation claims must be

20  brought a year from the date the statement was made to someone other than the person being

21  defamed.  *See Shively v. Bozanich*, 31 Cal. 4th 1230, 1246 (2003), as modified (Dec. 22, 2003)

22  (recognizing that "[i]n a claim for defamation, as with other tort claims, the period of limitations

23  commences when the cause of action accrues.").

24      Esquibel appears to argue that his termination is the basis for his defamation claim.  If that

25  is his claim, I agree with Kinder Morgan that any defamation claim against it in connection with a

26  statement made prior to his termination is time-barred because his last day at Kinder Morgan was

27  on or about January 11, 2019 and he filed his Complaint more than a year later on January 13,

28  2019.  *See* Werme Decl. ¶ 2; Notice of Removal, Ex. B.  Such a claim would be dismissed with

prejudice.  But the FAC is vague concerning the date the defamatory statement was made.  *See*

FAC ¶¶ 8–13.  If it is alleged that defamatory statements were made after January 13, 2019, then

such claims will not be time-barred and therefore not futile.  Accordingly, Esquibel's defamation

claim is DISMISSED without prejudice, as limited above.

Esquibel also concedes that he cannot sufficiently allege that Kinder Morgan violated CAL.

BUS. & PROF. CODE § 17200 ("UCL claim").  Kinder Morgan contends that I should dismiss

Esquibel's UCL claim with prejudice because (1) Esquibel fails to specify when the alleged illegal

or "whistleblowing" conduct occurred and therefore the claim is barred by a four-year statute of

limitations; and (2) Esquibel fails to plead with the requisite particularity under Federal Rule of

Civil Procedure Rule 9(b).  Reply at 8–9.  Esquibel's potential claim is not time-barred; Kinder

Morgan terminated him only a year before he filed his Complaint.  He can amend his claim if he

alleges facts that support a claim within the statute of limitations period.  His third cause of action

is DISMISSED without prejudice.

## II.    CONTESTED CLAIMS

Esquibel does not concede to dismissal of the fourth and fifth causes of action.  Esquibel

also wishes to add a new cause of action under the False Claims Act.  Opp. at 8.  I agree with

Kinder Morgan that he has not stated a cause of action on which relief could be granted.  That

said, it appears that he could on amendment, and I will give him leave to do so.

### A.    Fourth Cause of Action:  Fraudulent Misrepresentation

Kinder Morgan moves to dismiss Esquibel's fourth cause of action, fraudulent

misrepresentation, because he "failed to set forth each defendant's alleged participation in the

fraudulent scheme."  Mot. at 12–13.  In the FAC, Esquibel alleges that when he was hired, a

policy-level manager for Kinder Morgan, Betty Temple, informed him that he was fully covered

for all California auto insurance coverages when operating the company truck.  FAC ¶ 36.  He

claims that had he known that these representations were false, he would not have relied on them.

FAC ¶¶ 37–38.

In his opposition, Esquibel does not dispute that he failed to allege with particularity his

fraudulent misrepresentation claim.  Instead, he elaborates on the facts asserted in his FAC and

1    contends that he can plausibly allege a new cause of action, promissory fraud, under the elements

2    of fraud:  (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable

3    reliance; and (5) resulting damage.  Opp. at 10 (citing *Beckwith v. Dahl*, 205 Cal. App. 4th 1039,

4    1060 (2012)).  Specifically, he states that (1) "Scott Manley falsely represented to Esquibel that

5    Kinder Morgan had or would obtain an insurance policy to cover any injuries sustained by

6    Esquibel incurred during the course and scope of his employment"; (2) Scott Manley and Kinder

7    Morgan knew that there was no such insurance policy; (3) Scott Manley and Kinder Morgan

8    "intended to induce Esquibel's reliance on the belief that he would be covered" because otherwise

9    Esquibel would not have accepted employment; (4) "Esquibel's reliance was justifiable because it

10   is not unusual for an employer to offer" this kind of insurance and it would not have been

11   "unusual for Esquibel to decline dangerous employment in the absence of such insurance"; and (5)

12   he incurred damages when he got into an accident and was told that the insurance did not exist.

13   Opp. at 11; Esquibel Decl. ¶¶ 4–5.

14        Kinder Morgan asserts that Esquibel cannot add new claims and that the relation-back

15   doctrine does not help him because his new theory is based on new facts that do not arise out of

16   the same transaction as those alleged in the Complaint or FAC.  Reply at 5–6.  This argument fails

17   for two reasons.  The relation-back doctrine is irrelevant.  Kinder Morgan does not assert that the

18   fraud claim is time-barred.  The doctrine allows claims that are barred by a statute of limitations to

19   relate back to the original complaint and no longer be barred.  *See* Fed. R. Civ. P. 15(c)(1) ("An

20   amendment to a pleading relates back to the date of the original pleading when . . . the amendment

21   asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

22   attempted to be set out—in the original pleading.").  That is not this situation.

23        The proper considerations for deciding whether Esquibel can amend his claim are "the

24   presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure

25   deficiencies by previous amendments, undue prejudice to the opposing party and futility of the

26   proposed amendment."  *Moore*, 885 F.2d at 538.  Under this analysis, I find that there is no

27   prejudice to Kinder Morgan and there will be no undue delay because discovery has not yet begun

28   and the case is at the earliest stage of litigation.  Amendment is appropriate because there is no

United States District Court
Northern District of California

8

1   evidence of bad faith:  Esquibel filed his Complaint pro se, this will be Esquibel's first

2   amendment, and the amendment will not be futile because it would cure the deficiencies that

3   Kinder Morgan points out.

4          And if there was a statute of limitation that barred Esquibel's claim, the relation-back

5   doctrine could save his claim.  Esquibel's new claim arises out of the same conduct, transaction, or

6   occurrence as the ones he alleges in the FAC—Kinder Morgan's alleged misrepresentation about

7   its auto insurance policy.  *See* FAC ¶ 36.  The cases Kinder Morgan relies on are inapposite for

8   this reason; they concern plaintiffs who alleged new claims that did not arise out of the same

9   transaction, which is not the case here.  *See, e.g.*, *Williams v. Boeing Co.*, 517 F.3d 1120, 1133

10  (9th Cir. 2008) (rejecting application of relation-back doctrine where the new claim constituted a

11  new legal theory based on different facts than those pled in original complaint).

12         Accordingly, Esquibel's fourth cause of action is DISMISSED without prejudice.  He may

13  amend the FAC and assert a cause of action for promissory fraud.[1]

14         **B.      Fifth Cause of Action:  Wrongful Termination as a Matter of Public Policy**

15         Esquibel's fifth cause of action is for wrongful termination in violation of public policy.

16  Mot. at 16–17.  An employer's discharge of an employee in violation of a fundamental public

17  policy embodied in a constitutional or statutory provision can give rise to a tort action.  *Barton v.*

18  *New United Motor Manufacturing, Inc.*, 43 Cal.App. 4th 1200, 1205 (1996).  In order to sustain a

19  claim of wrongful termination in violation of public policy, a plaintiff must prove that his

20  dismissal violated a policy that is fundamental, beneficial for the public, and embodied in a statute

21  or constitutional provision.  *Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 1256 (1994).  Kinder

22  Morgan asserts that because Esquibel's wrongful termination claim depends on his UCL claim,

23  which fails, his wrongful termination claim must also fail.  *Id.*

24         Esquibel does not respond to that argument but instead asserts that he can plausibly allege

25  a wrongful termination claim based on CAL. LAB. CODE § 1102.5(b), which prohibits an employer

26

27  ───────────────────────
    [1] Kinder Morgan asserts that all claims against Kinder Morgan, Inc. should be dismissed with
    prejudice because Esquibel does not allege any claims against this entity in his FAC.  Reply at 5
    n.1.  But I will give Esquibel the opportunity to amend his FAC and allege claims against Kinder
28  Morgan, Inc. as well for the same reasons I find that amendment is proper.

United States District Court
Northern District of California

from retaliating against an employee "for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency." *See also* CAL. LAB. CODE § 1102.5(a) (prohibiting an employer from preventing an employee from disclosing information to a government or law enforcement agency . . . if the employee has reasonable cause to believe that the information discloses . . . noncompliance with a local, state, or federal rule or regulation."); Opp.at 9–10.  Specifically, he contends that he was subjected to racial harassment and was ultimately terminated in retaliation because "Kinder Morgan believed that Esquibel would disclose information about the Corrosion Problem to government or law enforcement agencies."  Opp. at 9–10.

Again, Kinder Morgan only asserts that the relation-back doctrine does not allow Esquibel to add new claims based on new facts that do not arise out of the same transaction alleged in the FAC.  Reply at 5–6.  But it does not assert that the wrongful termination claim is time-barred, so the relation-back doctrine is irrelevant.  For the same reasons explained above, I find that amendment is proper.  *See* Part II.A.  Amendment would not be futile and would cure the deficiencies that Kinder Morgan highlights.  *See Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 922–24 (2014) (holding that CAL. LAB. CODE § 1102.5(b) "establishes the Legislature's declaration of a public policy sufficient to allow [plaintiff's wrongful termination in violation of a public policy] claim to proceed").  And if the relation-back doctrine were relevant, Esquibel's claims could relate back because he alleges facts about the Corrosion Problem and the racial harassment in his FAC.  *See* FAC ¶¶ 27–28.

Accordingly, Esquibel's fifth cause of action is DISMISSED without prejudice.  Esquibel may amend his FAC and assert a cause of action for wrongful termination under CAL. LAB. CODE § 1102.5.

### C.    New Cause of Action:  Violation of the False Claims Act

Based on the facts related to the Corrosion Problem, Esquibel contends that he can plausibly allege a new cause of action, a qui tam action under the False Claims Act.  Opp. at 8. Specifically, Esquibel alleges that Kinder Morgan knowingly ignored the Corrosion Problem and "obtained at least one renewal of at least one government contract based on at least one such false

United States District Court
Northern District of California

report." *Id.*  This allegedly violates the False Claims Act, which prohibits any person from knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim.  *See* 31 U.S.C. § 3729(a)(1)(B).

Kinder Morgan's assertion that the relation-back doctrine applies is incorrect, again, because it does not assert that Esquibel's False Claims Act allegations are time-barred.  The facts supporting this new cause of action arise out of "a common core of operative facts" as those stated in the FAC—Kinder Morgan's alleged failure to remedy the Corrosion Problem.  *See* Reply at 5–6; FAC ¶ 27.  For the same reasons as before, I find that amendment is proper.  *See* Part II.A. Esquibel has leave to amend his FAC to assert a cause of action under the False Claims Act.

## CONCLUSION

For the reasons explained above, Esquibel's second and sixth causes of action are DISMISSED with prejudice.  His first, third, fourth, and fifth causes of action are DISMISSED without prejudice.  He is GRANTED leave to amend his first, third, fourth, and fifth causes of action and to add the False Claims Act cause of action within the next 20 days if he so chooses.

**IT IS SO ORDERED.**

Dated: June 15, 2021

William H. Orrick
United States District Judge

United States District Court
Northern District of California

11